The next case today is Karen Morales Posada et al. v. Cultural Care, Inc. Appeal Number 21-1676. Attorney Sullivan, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors, and may it please the Court. Kathleen Sullivan for Appellant Cultural Care. Chief Judge Barron, I respectfully ask your permission to reserve three minutes for State Department to create exchange visitor programs and to delegate administration of those programs by grant, contract, or otherwise. The State Department administers at least one of these exchange visitor programs itself, but as to the au pair program at issue in this case, like many other exchange visitor programs, the State Department has delegated the administration of the program to private sponsors like Cultural Care and has promulgated detailed and comprehensive regulations governing the sponsors' relationship with the exchange visitor au pairs. Under that regulatory scheme, the District Court legally erred in declining to dismiss the claims brought here by Morales Posada and her fellow plaintiffs. To begin with derivative sovereign immunity, Cultural Care is entitled to derivative sovereign immunity against all the claims in this case. To make this point, let's just start with the obvious. If the State Department had been administering the exchange visitor program here and had been sued under the claims at issue in this case, it clearly would have had federal sovereign immunity to suit. It has not waived sovereign immunity with respect to the state claims at issue here or the FLSA claims to the extent it's not an employer, which I'll get to in a minute. A sponsor like Cultural Care enjoys the same immunity from suit as the State Department would have had, had it retained administrative responsibilities itself. What supports that proposition? As I read Yearsley, there's really not an immunity question. There's a liability question. So what supports the idea that they have the immunity? In Yearsley as I read it, the question is simply and it was an odd situation because the government there had set up a compensation regime. So the real issue was just whether there was a takings and the government wasn't acting unlawfully in committing the takings because it had provided for compensation. So the only issue there was if the private actor was just carrying out exactly what the government did, it wouldn't have been doing anything illegally. But that's not an immunity point. That's a liability point. With respect, Your Honor, the subsequent case law, including FDIC versus Meyer, and in particular, Campbell Ewald is very helpful on this point. It describes Yearsley as a derivative sovereign immunity doctrine. It may use that wording, but for collateral order purposes, just like the word jurisdiction gets thrown around, sometimes they use it. They don't really mean jurisdiction. The court points that out. What is the basis for concluding that the pure immunity that the sovereign has just as being a sovereign, not policy reasons like qualified immunity for the fares doctrine, but just inherent in being a sovereign, I have an immunity. What is the authority that suggests that can succeed to a private actor? The answer is that the government is entitled to use private actors. In fact, it would be inefficient not to in many contexts. Is there any authority that suggests, other than Yearsley, that indicates that a private actor succeeds to the inherent immunity of a sovereign by virtue of being a sovereign, as opposed to in a circumstance in which there's a special policy justification for the immunity that it makes sense to apply to the private actor for the same policy reasons it would make sense to apply it to the government? Your Honor, I respectfully disagree that it's pure policy reason. Let's take what the givens absolute immunity under a case like Nixon against Fitzgerald, qualified immunity under a case like Mitchell against Forsyth, or Filarski against Delia, which I think is a very helpful Supreme Court authority on this point, because it extends qualified immunity to private actors. But only because the reasons for the immunity in policy terms make sense to apply to that particular private actor, whereas in Richardson they say no, in that circumstance it wouldn't apply. Correct, Your Honor, but here's the difference between this case in Campbell-Ewald and this case in Richardson. There is no dispute here that the private actor is carrying out and following the government's directions under the regulations the State Department has promulgated. In Campbell-Ewald, the contractor was sending texts contrary to the federal directive that it there's no factual dispute here that cultural care is carrying out the mission that the State Department delegated to it and instructed it to carry out. So there's no factual dispute about defiance of the government's regulations. Counselor, can I ask you to pause on that for just a moment, please? This assertion there are no factual disputes here. Using qualified immunity is, I think, a helpful analogy. Sometimes the qualified immunity issue will, in the court below, involve a ruling of law, and if so, then it's subject to interlocutory appeal. In other instances, the qualified immunity issue turns on disputed issues of fact, and then interlocutory appeal does not apply. In this case, I mean, there are claims, there are allegations that your client exceeded the authority bestowed upon it by the State Department. That strikes me as a factual dispute that might be important to the issue of derivative immunity. So why don't we have a situation here that's comparable to the qualified immunity context where there are factual disputes here, which make this interlocutory appeal inappropriate? What's your view on that? Your Honor, our view is that the factual disputes are not legally relevant or material, and here's why. Campbell Ewald is a case where derivative sovereign immunity was lost where the merits claim was you are violating rather than carrying out the government's directive. The same thing arises in a qualified immunity context where you must ask was the factual basis for finding the legal obligation unclear, not clearly established. If that's in dispute, maybe interlocutory appeal is inappropriate. But here the only way, notice here the factual dispute is did cultural care go above and beyond the obligations set forth in the regulations, for example, to look after any medical attention needed by the au pairs rather than just emergency medical attention, and nothing in the complaint alleges injury to the au pairs from this going above and beyond. Your Honor, we would respectfully suggest that going above and beyond your federal requirements does not constitute the kind of factual dispute that would defeat interlocutory review here as it did in a case like Campbell Ewald. This is a case where going above and beyond doesn't harm anybody, and, Your Honor, to be very clear, the regulations here are being carried out by cultural care. The core dispute here is does cultural care have to pay state-mandated wages or does it have to inform people of the state-mandated wages, and the regulations quite to 22 CFR 62.16a. Regulations do not require cultural care to pay. The host families pay, as this court recognized in Caprone in calling them the employers. What's the significance of the regulation requiring compliance with state and local law, to your argument? Your Honor, we see that as just a requirement of compliance for ministerial obligations of state law. It would be contrary to the regulations that say cultural care or a sponsor doesn't have to pay, doesn't have to inform you about anything more than the federal stipend, that 62.31j1, and it doesn't have to ensure that host families comply with anything more than the federally required stipend and the federally required hours limits. So, in other words, your legal claim hinges on the conclusion that that regulation can't be read to require compliance with state fair wage laws. That's exactly right, Your Honor, and that just creates the alternative. That's the basis for our field preemption argument. I don't want to run out of time to cover preemption and FLSA as well. I'm just going back a step. In a typical immunity, sovereign immunity or classic sovereign immunity, whether the sovereign was complying with its legal obligations or not is obviously irrelevant to whether it has the immunity, correct? Yes, unless it's acting unconstitutional. You see the puzzle that I have, which is that the whole idea of sovereign immunity in its classic sense, it's not a purely established. It's just whether I'm acting lawfully or not, I'm immune. You can't sue me. So, it just seems odd that the question of derivative sovereign immunity would then be an immunity that turns on whether you're acting lawfully. Well, Your Honor, derivative sovereign immunity turns not on whether you're acting lawfully. It turns on whether you're acting at the government's direction and on the government's behalf. Are you a surrogate, in effect, a private agency here? This is clearly a situation where you are. What I'm suggesting is that where there's a factual dispute, such as the one Judge Lopez raised, or a credible allegation that you're violating your own federal mandate, then you might lose the benefit of derivative sovereign immunity. That's how I read Campbell Ewald. Campbell Ewald says you would have had derivative sovereign immunity, notwithstanding that you don't have the dignitary interest of the state because, of course, the distraction and deterrence. Even if they're violating the state and wage and hour laws, that's not relevant to whether we're acting consistent with federal law. That's exactly right, Your Honor. For the purpose of the threshold immunity question. So, in other words, even if you're wrong on preemption, you could be right on the immunity for that reason. That's exactly right, Your Honor. The only thing that's relevant... That then depends, though, given the nature of the immunity claim you're raising. That would require us to find, and if I'm hearing you right, there's no case actually so holding, that that kind of sovereign immunity is something that can be given and conferred upon a private actor. Yes, we do argue that, Your Honor, and I would cite the cases of McMahon out of the 11th Circuit and Judge Wesley's opinion. Wasn't McMahon a Farris Act case? A Farris immunity case? Yes, McMahon was a Farris Act case. It's not a non-Farris Act, non-qualified immunity, non-policy-based immunity. That's just the inherent immunity of a sovereign. I don't know of a case saying that. Maybe there's no case saying the opposite, but you're asking us to make a fairly significant holding then, aren't you? We are, Your Honor, but we don't think... On that point, I'm trying to find what's at stake here, counsel, in the sense when we're dealing with absolute immunity, I think I understand the larger consequences if we don't treat absolute immunity as subject to the collateral order doctrine. Same with qualified immunity. We've talked about that. Same with double jeopardy. I understand that why immunity from suit becomes very important in those situations. I'm trying to understand what is the larger... Because we're supposed to apply the collateral order doctrine very sparingly. We do so when the stakes are very high, the consequences of forcing somebody to go through suit are very high. What is there about derivative immunity here that rises to that level that we find in the absolute immunity, qualified immunity, double jeopardy case? What's at stake here if your it is to be used sparingly and only when there's a substantial public interest, but there are two substantial public interests here. Number one, the interest in foreign relations. From Fulbright-Hayes to the present, these exchange visitor programs have been about foreign relations, and that is a substantial interest that implicates the separation of powers. Before you get to the second one, that sounds like you're asking us to now identify a new species of immunity, which is akin to Ferrer's immunity, that's now a foreign policy, but I thought you were making a different argument to us, which was not policy-based, which is just that the United States has not waived its own sovereign immunity. It doesn't have to have a reason for it beyond it being a sovereign, and any actor acting as a delegate of it, acting according to the delegation, gets that same immunity. That's not a foreign policy-based justification. Correct, Your Honor. We do think that is sufficient to confer derivatives. But if that's true, that applies in every case, including cases having nothing to do with foreign policy concerns, right? That's correct, Your Honor. What I'm relying on is the language in Will v. Halleck and other cases relying on Will v. Halleck that suggests there may be a fourth requirement, and Judge Lopez, there is very sparing. The court is instructed to use collateral order review sparingly. There's no dispute about the conclusively determined prong here. There's no dispute about the separate from the merits prong here. The only dispute is over effectively unreviewable, and Your Honor, you could read Will v. Halleck as imposing a sort of fourth requirement, the prudential requirement that Justice Souter referred to in that opinion, that you look to whether there's a substantial public interest sufficient to displace the ordinary finality rule, and I'm saying to the extent Will provides a fourth interest, the interest here is foreign policy, but Judge Barron, there's another one, and it does make this like other cases, like other qualified immunity cases. The other substantial public interest is in letting the State Department, which is tasked with creating these programs and authorized to delegate administrative responsibilities by grant contract or otherwise, it would defeat the efficiency of that sort of private delegation unless the private delegatees had the same immunity as the State Department would have had if it did it itself, and on this, Your Honor, I would highly commend to the court's attention the opinion of the Chief Justice in Filarski v. Delia because it goes at great length, and obviously that's a qualified immunity case, but it goes at great length into the prospect that in a well-functioning government, government can't do everything by itself, can't do everything at public expense and delegate. But that sort of doesn't that demonstrate the point? I mean that that was adequately served by a qualified immunity. You're asking for an absolute one. We are, Your Honor, but the argument for the immunity being a grounds for collateral order review is identical. Absent the immunity, you will deter sponsors like cultural care from going into these programs in the first place. Judge Lopez's question is, why treat it as an immunity rather than a defense to liability? If it's the latter, it's not subject to collateral order review. You don't dispute that, do you? We don't, Your Honor, and there's a circuit split. Obviously, the Ninth and the Fifth Circuits don't even think the federal government has absolute immunity from suit and therefore it can't confer derivative sovereign immunity. We think that's incorrect. We think that the Supreme Court in cases like FDIC versus Meijer has treated sovereign immunity as an immunity from suit and we think derivative sovereign immunity should be the same. The only difference between the government and the government surrogate, Your Honor, is the dignity aspect. But the distraction and the deterrence rationales for providing collateral order review, Judge Lopez, the distraction, you're going to distract sponsors from serving their federally mandated duties here and more important, you're going to deter them. If you turn sponsors who signed up to be administrators of these exchange programs into employers with joint and several liability for the kinds of claims that are brought here, you'll drive them out of the program and the State Department will have to either abandon the foreign relations goal altogether or do everything itself and the whole point of collateral order review is to make sure that you don't have those effects. I sovereign immunity point to field preemption, if I may. Before you do, I just want to make sure Judge Howard had no questions about it. I'm good, thank you. Okay, go ahead. Your Honor, this court, the field preemption issue begins where this court left off in its prior decision in Caprone. Obviously in Caprone, the court determined that there is not field or conflict preemption of state. We only get to this if there's pen in the pallet jurisdiction? Correct, Your Honor. You want to just address how it can be sufficiently intertwined? Yes, intertwined because as in the Lopez against Massachusetts case, the statutory analysis of whether the federal government has occupied the field of the sponsor's wage and hour relationship to the au pairs informs your understanding of the derivative sovereign immunity point. To the extent that the preemption point is established, it helps to inform the understanding that here cultural care is carrying out exactly what the sovereign tasked it to do. I just think it's sort of an order of operations point. Wouldn't it be for on whether they were acting in accord with the State Department regulations? In assessing that question, there would be no need to us to assess the comprehensiveness of those regulations and the preemptive effect of them. While it's true that if we decide the preemption question, that will bear on the derivative sovereign immunity, it doesn't seem to me as obvious that to decide the derivative sovereign immunity, we have to do a preemption analysis. Just to build on your question, counsel, if I might. Field preemption pretty much depends upon the judgment that's to be made about the intention of Congress, or in this case, the State Department. That intentionality question seems somewhat far removed from the way in which the regulations require your client to work and whether they are in compliance with it. I question how, given the different focus of field preemption, that analysis is inexorably intertwined with the derivative immunity question. I struggle to see that. Your Honor, I concede as I must that the pendant jurisdiction question is closer for preemption than for the FLSA claim. Maybe I could just say for a minute, by way of contrast, for the FLSA claim, we're squarely under Lopez against Massachusetts because the issue as to derivative sovereign immunity with respect to the FLSA claim is, are we an employer or not? The federal government has, under the FLSA, waived sovereign immunity. If it's an employer, it has not waived sovereign immunity if it's not an employer. The FLSA claims, I respectfully submit to the Court, Your Honors, have pendant jurisdiction over the FLSA claims because that's Lopez. Even there, we wouldn't have to exercise it in the sense that we wouldn't have to decide whether you're an employer to resolve the derivative sovereign immunity issue if you lost on derivative sovereign immunity on the ground that, say, derivative sovereign immunity is just a defense to liability. Isn't that right? No, Your Honor. We think that you have collateral order. Yes. If you don't have jurisdiction over the federal derivative sovereign immunity claim, then there's no pendant jurisdiction. But if you have jurisdiction over that, even if you rule against us on the merits, you still have jurisdiction over the FLSA claims because whether the complaint fails to plead as a matter of law that we are an employer for FLSA purposes under the Bay State factors, that statutory analysis is inextricably intertwined with the question of whether we have derivative sovereign immunity because the federal government wouldn't be an employer in this situation and we get derivative sovereign immunity as against the FLSA claims from that. That's exactly Lopez. Obviously, the pendant jurisdiction question, the inextricably intertwined question is closer for the preemption claims, Your Honor. I concede that. But Lopez itself makes reference to the concept of overlap and reminds us that, of course, pendant jurisdiction is a discretionary doctrine. So to the extent the analysis of the occupation of the field under the preemption question can help inform whether we are operating as and solely as a federal delegate, we're not operating in a private market in which we're heavily regulated. We exist because of and solely because of the federal creation of sponsors like us. We don't exist for any purpose other than to satisfy the federal mission. We respectfully submit that there's overlap. You have discretion under the pendant jurisdiction doctrine to consider preemption as part of that overlap and therefore you have jurisdiction. We think the simplest way to resolve the case, Your Honors, is to announce that derivative sovereign immunity attaches in a case like this one where, number one, we're acting at the government's direction. Number two, we're acting on the government's behalf. Number three, we're not alleged to nor is there any basis to suppose that we are violating our federal mandate as the contractor was in Campbell Ewald. And fourth, there's no factual dispute as to whether we're acting outside of that remit. That would be, we submit not an extension of World Trade Center or McMahon. We think nothing in those cases turned on the Ferris or Stafford Act immunity. They were immunity cases. They were aspects of derivative sovereign immunity. This is another one and Florsky against Delia reminds us that just as in the qualified immunity context, there are many public-private partnerships so there is one here. You turn back to this issue which is that threshold issue and I want to leave time if you want to say anything about the preemption issue on the merits itself but since you come back to that question about whether this is a defense of liability or an immunity by analogizing it to cases that clearly treated as immunity but arguably are not quite the same given that they have this Ferris Act or qualified immunity policy-based thing that's different than this case. What do you make in the government's amicus brief in Al-Shamari? They cite the passage from Justice Holmes in Sloan Shipyards where he says federal government generally cannot be sued for a tort. Well, it cannot generally be sued for a tort. Its immunity does not extend to those that acted in his name and then it states to Brady versus Roosevelt saying immunity from suit cannot be obtained through a contract between the defendant and the government. Yeah, well we think it's in obvious tension with the Yearsley line and the description of that line in cases like McMahon and World Trade Center as an aspect as a derivative sovereign immunity line of which Ferris and Stafford are one aspect. And what am I supposed to do with the fact that the tension you're identifying seems to all come from Supreme Court. I believe that first principles determine this case. This is a case in which it's easier than the contract cases. In the contract cases, the threshold jurisdiction question and immunity question often bleeds into the merits because what is being alleged is that the contractor tortured me. The contractor violated my rights. The contractor didn't do what it was supposed to do. It did something against its federal remit. In the contractor cases, you often have to ask was the contractor acting within the federal remit. This is a far easier case. It's a simpler case that you can decide by first principles. State Department could have run this program itself. That costs a lot of taxpayer money. If you can get a private entity to do it efficiently, effectively, to promote foreign relations with the host families being the payors rather than the taxpayer. State Department's made the decision to do that and it's a classic case in which we are simply stepping into the government's shoes and should enjoy the government's immunity. Please finish your point. I'm sorry. Please finish your point. Go ahead. I'm sorry, Judge Lopez. I just wanted to say that this court is empowered to announce that and it represents, we think, not a true extension of McMahon and World Trade Center but a recognition of their underlying principle. Counselors, very quickly, several times you referred to your client as a surrogate for the State Department. I think thereby avoiding any suggestion, which I understand why you would. There's no contract here. I don't think there's any suggestion that Cultural is somehow an agent of the State Department. And so you use the word surrogate. That strikes me as asking us to recognize derivative sovereign immunity in a whole new area. I mean, are there any cases that would support the recognition of this derivative community for which you characterize as a surrogate rather than a party who is in a contractual or agency relationship with the government? Your Honor, I don't have a case that's squarely on point because the regulatory scheme here is quite unusual. It literally makes Cultural Care and other sponsors like it the administrator of a program that the State administers itself. So, Your Honor, we think this is an unusual regulatory scheme, but the principle is common. And Your Honor, if I could respectfully refer you again to Filarski v. Delia, it's a fascinating historical review the Chief Justice gives us of public-private relationships like this one. And one of the ones that struck me is he mentions that in the 19th century, you had justices of the peace coming in, private parties, private attorneys coming in to justices of the peace, and they're paid by the litigants who appear in front of them. They're not paid by the government, but they are performing a public function at the direction and on behalf of the public government, and they're being paid privately. That's a qualified immunity case, but the principle is the same. Is the logic of that that the justices of the peace had sovereign immunity? Qualified immunity. No, no. It is the logic of your argument that the justices of the peace have sovereign immunity. It is, Your Honor, that if the case had been presented in a posture where there was a wage and hour claim against the justices of the peace by his clerk, then there would have been sovereign immunity against that claim. It didn't arise in that case because the issue was qualified immunity for an alleged Fourth Amendment violation, and the court squarely held that qualified immunity applied. So, we don't think it's much of an extension beyond that reasoning here. Judge Lopez, does that answer your question? It's a like case under a different immunity, but we think that it's a distinction without a difference, that it's under a different immunity. That's helpful. Your Honor, just one last question. Why does Richardson come out the way it does then under you? Yeah, I think it's a fair question, Your Honor, and it does create confusion. I think because in Richardson there is a factual dispute of the kind we've been describing, that it is not as clear. But they rejected the immunity claim on the merits, not that they didn't have jurisdiction to resolve it. So, Your Honor, the best I can do with Richardson is to say it's a very different case because the court expressly recognized that the contractors in Richardson are operating in a broader private market. They are operating more like heavily regulated industries. But isn't that true of cultural care? There's other Yes, Your Honor, but all of us sponsors under the exchange visitor programs, we live and die by the federal mandate. We don't, we serve the federal mandate. We were created by the federal government. Well, Your Honor, the prudential analysis of the private prisons in Richardson, I think, suggests that there will not be a disincentive to private prisons if they are denied the relevant immunity. Here, it's absolutely clear that it will be a disincentive. If I go into a program and I'm told, administer this, please, find us some qualified au pairs who meet federal requirements, help introduce them to host families who may elect to take them into their homes, monitor them, make sure they're safe, make sure they're not being harmed, check in with them once in a while. If I sign up to be an administrator and I'm turned against all expectation into an employer, withdrawing several liability against wage claims and obligations to 50 state regulators, I'm not going to go into that business. That brings us to preemption, which I know you wanted to raise. Why don't you just take two minutes since we're far over. You have more time to address the preemption issue. Thank you very much for extending the extra time. Field preemption, reserved in Caprone in footnote five as to sponsors. The detailed regulatory scheme here does events preemptive intent with respect to the field of the sponsors wage and hour obligations in relation to au pairs and host families. We've talked before about what those obligations are. The federal regulations say you don't have to employ them or compensate them. You can designate the host family to do so. This court in Caprone treated the host families as operative employers. You don't have to tell them about state minimum wage requirements. You have to tell them about the federal stipend and the federal hours requirements. You don't have to ensure that host families comply with state wage laws. You just have to make sure they comply with the federal minimum weekly stipend and hours requirements. Once that field has been stated and delimited by the court, it's occupied. It doesn't matter that it's a narrow field. National Federation for the Blind against United was about the field of accessibility of airport kiosks. The field of the sponsors obligations with respect to minimum wage, maximum hour requirements in relation to host families and au pairs has been occupied. Your Honor, the presumption against preemption does not apply to the sponsors here because as we just discussed, sponsors here are a creation of federal law since the earliest Fulbright-Hayes and the this is not an area of traditional state regulation. Your Honor, conflict preemption is similarly not determined by Caprone and the court's rejection of the conflict preemption argument in Caprone and here's why. It's not a case about floors and ceilings. Our argument about conflict preemption is a category argument. Administrators are not employers. If you turn administrators into employers, there's a conflict because if I have to pay or guarantee wages, if I have to intrude into the monitoring of the home much more than 22 CFR 2062 31C requires me to, if I'm subject to civil damages liability as opposed to revocation of my privilege of being a sponsor, all of those things create a conflict and the fundamental conflict, it's not a floor ceiling issue. It's a question of treating me as an employer when I was an administrator. Your Honor, we talked about penitent jurisdiction. We think that Lopez suggested that overlap is part of the inextricably intertwined question but lastly on FLSA, we've talked about why penitent jurisdiction is clearly appropriate under Lopez against Massachusetts. Just a word on the merits. The allegations of the complaint do not make out employer status under the Bay State factors or any other definition of employment because we don't pay them. It's not alleged that we supervise the au pairs or determine their work schedules and it's not alleged that we can hire and fire the host families and the au pairs make their own employment arrangements and when we screen and we send au pairs home because there's something going on, it's to serve our foreign relations purpose, not an employment purpose. Thank you. Thank you, Attorney Sullivan. Please mute your audio and video at this time. Attorney Seligman, please introduce yourself on the record to begin. Good morning, I suppose afternoon where you are. Good afternoon, Your Honor. May it please the court, David Seligman for Karen Morales-Posada et al. I'd like to begin with appellate jurisdiction. For the court to conclude that it has appellate jurisdiction on an interlocutory basis of denials of yearsly immunity, it would first have to split with the 5th, the 7th, and the 9th circuits which have all concluded that the federal government's sovereign immunity is itself not a right to avoid suit. But to conclude that you do not have jurisdiction here, you don't need to answer that question and that's because whatever the federal government's sovereign immunity may be, a yearsly defense is very much a right to avoid suit. Second, a yearsly defense does not implicate any of the substantial public interests that would justify categorical application of the collateral order doctrine. And third, in the vast majority of yearsly cases, including in this case, the yearsly defense will not be completely separate from the merits of the action. I'd like to begin with the first of those points having to do with whether yearsly is a right to avoid suit. So in Campbell-Yould, the Supreme Court explains that yearsly does not extend to federal contractors the federal government's abrasive sovereign immunity. My friend Miss Oliver is right that there's reference to derivative immunity throughout that opinion. But throughout the opinion, the court actually refers to derivative immunity always in quotation marks. And it explains that derivative immunity arises not in cases where the yearsly defense arises, not in cases where a federal contractor says, I'm operating as a federal contractor and therefore I'm immune from suit even if I violate the law, that rather, yearsly arises in cases where a federal contractor can say, I'm operating on behalf of the federal government and I'm operating pursuant to the federal government's explicit instructions, and therefore I didn't violate the law. The U.S. government in its amicus brief to the Ninth Circuit in the Child's case recently described that in this way, derivative immunity was actually a misnomer to describe the yearsly defense, that what privilege from the federal government to its contractors to engage in conduct that would otherwise be unlawful. Is that a way of saying it's a defense to liability and not a true immunity from suit? That's right. Yeah, but so what do we do in yearsly itself? As I understand it, the posture procedurally was such that there was no claim of immunity from suit. Is that correct? I believe that's right, Your Honor, yes. But what do we do about the fact that subsequent Supreme Court cases describing what went on in yearsly describe it as an immunity rather than a defense to liability? It is true that Supreme Court decisions have sometimes referred to yearsly and Court of Appeals decisions have referred to yearsly as an immunity. I don't think that that resolves the issue, as Your Honor alluded to in a conversation with Ms. Sullivan. Very often, courts can be imprecise about their language in that regard. I'll also say even if it is sort of technically an immunity, that doesn't mean that it's a right to avoid suit in the collateral order doctrine analysis. So for example, we often refer to state action immunity to the antitrust laws, and yet courts around the country have concluded that denials of state action immunity don't give rise to... But that's because it's not an immunity from suit. That's right. Okay, so how come, and this is what I'm trying to figure out, it could either be an immunity from suit or a defense to liability. How do I figure out which one it is and why? I think on this question, certainly, I think you'd look at two factors. First, I would look at the nature of the relationship between the federal government and its contractors when yearsly applies, and I would look at the Supreme Court's description of the yearsly defense in Campbell-Yule, where the Supreme Court says this isn't about a sort of blanket immunity from suit, no matter whether or not what the contractor did was legal. Rather, usually applies when the federal contractor can say that what it did is legal because it acted on behalf of the federal government. I think that that's the... is that the illegality, if it exists, is not a violation of federal law itself. It's a violation of state law, and if I'm understanding the idea for purpose of the immunity question, we're supposed to ignore the claim of field preemption, and so I think the right way to think about it, if I'm following the analysis, the person claiming derivative immunity is assume no field preemption, assume a violation of state law, and then ask yourself, did you do anything that the federal government did not authorize you to do in violating state law? If the answer to that is no, then you did all the things the federal government wanted you to do. That being the case, why shouldn't you get the same immunity the federal government would have if it had been sued? What's the answer to that? I think the answer to that is that the federal government can't extend through its contract its immunity here, and that question was before the court in Campbell-Yuild. So in Campbell-Yuild, the Supreme Court was asked to decide whether the contractor received or could benefit from the same sovereign immunity as the federal government, and the Supreme Court answered no, that it's not the same kind of protection, that it's fundamentally different, that it's about whether the federal contractor was acting pursuant to the authorization and the explicit instructions of the federal government. I'll say that whether or not... No, but I think that slips by the point I'm trying to get you to focus on, if I'm supposed to go. If there's no dispute that the private actor was acting in accord with the delegation from the federal government, it was doing everything the federal government wanted to do, and in the course of doing all that, it violated state law, and the federal government had just chosen not to preempt state law. If the sovereign had done it itself, it would have immunity. That being the case, why shouldn't the delegate, doing all the things the federal government asked it to do, why shouldn't it have sovereign immunity? Campbell-Yuild won't answer that question, because in that instance, it's not doing everything exactly as it's supposed to do. So what's the answer to that? One possibility is sovereignty is a special thing. The sovereign has it. They can't give it away. No one else gets it. Maybe there's other policy reasons for granting immunities. When those apply to the sovereign, they might also apply to a delegate, but the dignitary immunity that a sovereign has simply isn't transferable. If that's the position, what supports that view? The dignitary interest of the sovereign cannot be extended through contract. I'd say that that would be Campbell-Yuild, and Your Honor referred to the analysis from Justice Holmes as well, which is cited in the federal government and the U.S. government's amicus brief in the Al-Shammari case. I think that it's a foundational principle that the general sovereignty of the federal government can't be extended through contract, but I should be clear whether or not a yearly defense can be framed as a right not to be sued, and the Supreme Court's collateral order doctrine jurisprudence is clear on this point, that whether or not it can be framed as a right not to be sued, that's not dispositive. The labels aren't dispositive here. The question is whether the right not to be sued implicates substantial public interest that would justify sidestepping the bedrock final judgment rule, and in the in yearsly cases, there are no such substantial public interests. So my friend, Ms. Sullivan, she suggested that the interest at from their work. The Supreme Court in Will v. Halleck deals with that question directly. Will v. Halleck was a case brought against federal customs agents, and the Supreme Court says that the interests of efficiency and the concerns about distracting law enforcement officials by litigation, that those wouldn't be sufficient to trigger application of the collateral order doctrine. The court contrasted that case with the case of qualified immunity. So in qualified immunity cases, and referred to the Mitchell v. Forsyth case on this point, and in Will v. Halleck, the Supreme Court says Mitchell v. Forsyth is different because in qualified immunity cases, we're interested in protecting the initiative of public officials in the face of unclear law. Yearsly cases don't involve a suggestion by a federal contractor that the law is unclear, and in fact, yearsly cases don't even involve situations where the federal contractor has discretion that we need to protect. In fact, very often, the yearsly applies, for example, in the Ninth Circuit, only where there is no discretion for the federal contractor to engage in the conduct at issue in the contract, or at issue in the case. I'd say... To be fair, I thought that Sullivan didn't just lump everything under distraction, but made a separate, at least one other separate point, about having to comply with the statutes and being a death knell to the program, period. What do you say about that? So those concerns, which we would disagree with, but those concerns don't support application of the collateral order doctrine. So in Mohawk, the Supreme Court explains that the collateral order doctrine, in the Supreme Court's words, is a blunt and categorical instrument. So to decide that there is appellate jurisdiction here, you'd have to decide that appellate jurisdiction is available under the collateral order doctrine in all cases in the category. We don't need to do that because in extreme cases, defendants like cultural care... What's the category? The category in this case would be cases involving the yearsly defense, I think, Your Honor. Now, there's... Cultural care has cited different immunities. The Ferris Immunity, Stafford Act Immunity, those have different constitutional common law and statutory bases than yearsly. But there may be individual cases where special concerns arise, and our system has ways of dealing with those. We've got 1292B, which cultural care didn't seek to avail itself of here. We have tools that the Supreme Court explains in Mohawk are available in cases where there's really a need on an individualized basis to address an issue for a final judgment. But the collateral order doctrine is a categorical instrument that is, I think, improper here. So the Supreme Court explains that the efficiency of government, that that is not enough to support categorical application of the collateral order doctrine. I think that those interests bear even less weight when we're talking about a private actor. So I would refer the court, for example, to its opinion in level B1 bank court, that's 878F second 10, which is a case in which this court... Was the certification was sought under 1292B, or how would that... So it wasn't sought and denied, just wasn't sought? No, no. So whether... This court in level B1 bank court explains that that's a qualified immunity case where a private actor, in this case, postdates Mitchell versus Forsyth. And the court explains that a private actor asserting a qualified immunity defense can't avail itself of collateral order doctrine review because the interests supporting the collateral order doctrine in the context of public officials don't apply to private entities, even those operating in concert with the government. So even if the interests of avoiding distraction were enough here, that still wouldn't be enough to justify application of the Uresley Doctrine in a categorical way with respect to federal contractors, private federal contractors. Your Honor, if I may, I'd like to turn to the merits of the... Before you leave, is that true even if we understand the Uresley defense as providing a defense from immunity from suit itself? Yes. But is there some category of case you have in mind where there has been an immunity from suit that the court has said, even though you have a right not to be sued at all, even though therefore the harm of going through the suit can't be made up for after the litigation ends by deciding the merits, nonetheless, we won't review it? Your Honor, well, the level of the one bank court may be such a case, but I think what you're identifying is that the question of the defense at issue is formally a defense to liability or an immunity from suit is often inseparable from the question of whether the policy... Exactly. So if we decide that it's a defense to liability, then I can see, well, there still might be a special reason to allow it to go on categorical review if this category of defenses to liability so demands that we hear it but on the flip side, if we decide that it is an immunity from suit, it would be awfully strange to say even though it's immunity from suit, you can't get the benefit of the collateral order, doctor. I'm not sure that that's right, but I think that in deciding whether what's at issue here is an immunity from suit, you also have to look at whether there's a substantial public interest that would apply. Well, why do we have to do that? I thought you were just saying maybe it's just a formal question of whether the claimed basis for the immunity inheres in the dignitary interest of the sovereign and just simply, if that's the basis where it can't be transferred, so it's just not an immunity from suit, end of story, then it's just a defense to liability, and then you just go through the factors under COHA. Absolutely. We win, I think, if that's the case, but we also win if the court says, look, whether this is a question of an immunity from suit or a defense to liability involves some difficult line drawing and we have to look at the Supreme Court's jurisprudence which focuses on the policy interests at stake. So in other words, I think we win either way. In other words, I'll say too that there's an collateral order doctrine review doesn't apply in the Yersley cases, and that's because very often, and this is true in this case too, the Yersley defense will not be completely separate from the merits. It would be an unlikely and I think an unusual case where the federal government would explicitly instruct a contractor to engage in conduct that violates federal or state law, and so the question of whether the legal violation occurs often overlaps substantially with the question of whether the federal contractor had the authority. That's true here as well. Is that true if we accept the appellant's contention about how to interpret that regulation about compliance with state and local law? If that regulation does not, the State Department regulation does not require compliance with state wage and hour laws, even assuming it doesn't preempt them. Then aren't the questions for claims about immunity separate and distinct from the question about the violation of law that's raised and separate from the preemption issue? Well, first your honor, under the again the collateral order doctrine analysis, I do think this is a categorical test, and so it's not just about the regulations at issue here, but even still that's not the only regulation at issue. So for example, I think we can't lose track of our deceptive trade practices act claims here, and the fact that there are regulations, specific regulations, for example section 62.9d, which prescribes that sponsors must provide truthful information to participants and to employers regarding... I take it their position on that is that that's speaking only to truthful information about the information that you're required under the regs to provide. If you're not providing required to provide any information about state law, then you'd be in perfect compliance with that regulation, even if you were not accurately describing the scope of state law. I think that's right, and I think that helps to and whether there's a violation on the merits. So for example, and it's... But that's what I'm saying, I don't understand how that shows overlap with the yearly defense. Their argument is that I can be in perfect compliance with the federal regulations, because the federal agents just, if they don't speak to any of these questions, are you saying that the question of whether they speak to them is bound up with the deceptive advertising? I see, on that claim in particular, I got it. Yes, so in cultural care's briefing below, cultural care says in response... That wouldn't be true for the preemption claim, or for the state wage and hour claims. I'm not sure of that, but on the deceptive trade practice that claim, for example, cultural care says... But that wouldn't be true for the state wage and hour forms. It may not be in this case, but I think that the fact that there is overlap, certainly with the deceptive trade practice that claim, helps to illustrate how there will often be overlap in when it comes to yearly defenses, which is another reason why, an independent reason why, the collateral order doctrine is such a bad fit here. If I may, Your Honor, I'd like to turn to the merits of the derivative immunity, the Yearly Defense. Yeah, go ahead. I understand, yeah. So on the Yearly Defense, I'd like to refer the court to the language of Yearly. The doctrine applies where an agent or officer of the government purports to act on its behalf. Yearly is rooted in the principle that the action of the agent is the act of the government. It's very hard to see how Yearly would apply in a situation in which there is no contract and there is no agency relationship. So a case that cultural care cited in its briefing, we think is helpful in illustrating why Yearly is such a bad fit here. They say to Murray versus Northrop Grumman, which is a Second Circuit case involving a different cultural exchange program, that was the Irish Peace Process Training and Cultural Exchange Program, I believe. And in that case, the Department of State set up a different kind of relationship with the administrator, with Northrop Grumman. So in that case, the Department of State contracted with Northrop Grumman to perform the work of administering the program, and it paid Northrop Grumman to administer the program. Here, cultural care doesn't have a And it's not paid by the Department of State. It's paid by host families, and it operates not based on the explicit instructions of the Department of State, but rather based on competitive pressures. So it plays an extensive role in training, screening, placing, selecting, and supervising au pairs, not because the regulations require all of that extensive involvement, but rather because they think that that's what host families want. And in fact, they advertise that. They advertise that other sponsors don't play as hands-on of a role for example, in matching au pairs with families. We shouldn't allow cultural care. We shouldn't allow the Yearly defense to immunize the competitive advantage that cultural care may be able to obtain by acting beyond the regulations. I'd also like to point to several aspects of the regulations here that disclaim an agency relationship, even if it were possible for regulations alone to be enough. So for example, section 62.95 says that sponsors like cultural care can't suggest that they are endorsed, sponsored, or supported by the federal government. Section 62.40 says that cultural care, and I think this also bears on the preemption analysis, that sponsors like cultural care can pay participants in employment cultural exchange programs, that they can pay them directly, or that they can have it set up in a different arrangement where there are other direct employers. Apologies, that's section 62.1. At this point, this is all in the briefing for us. Yes, yeah. Any further questions from the panel? No. No. Thank you. I just take 30 seconds to wrap up. Yes, Your Honor, I'll just finish on preemption. We don't think the court can get there because we don't think that there's even a substantial question here, a substantial claim to the Yearly defense, and we don't think appellate jurisdiction exists for the Yearly defense. But even if you do reach that issue, nothing in Caprone suggests that all of the sponsors' activities under all state laws are preempted, especially not those related to general rules of applicability. This is certainly especially true with respect to the deceptive trade practices at claims. The requirement that sponsors ensure a minimum wage under the FLSA isn't at all inconsistent with the obligation, certainly, that they be truthful to host families and to participants, the au pairs. Unless the court has further questions, we will rest on our briefs and ask the court to dismiss the appeal so that it may proceed to final judgment below. Thank you. Attorney Seligman, please mute your audio and video at this time. Attorney Sullivan, you have a three-minute rebuttal. Please reintroduce yourself back on the record to begin. Thank you, Your Honors. Kathleen Sullivan for Appellant Cultural Care. Just a few brief points. First, I would be very surprised if you adopted my friend Mr. Seligman's invitation to say that the federal government itself would not have immunity to suit here if the State Department were administering the program. That would be a very surprising and novel announcement. Second, I also disagree with my friend Mr. Seligman that the government cannot convey its sovereign immunity by contract, grant, or otherwise. It can. To hold otherwise would be to overturn, among other cases, Florsky v. Delia, which said that the government can convey qualified immunity by contract, or otherwise it can convey qualified immunity to those justices of the peace who are paid by the litigants, just as the sponsors are paid here by the host families. There is a settled case law that the government can confer its sovereign immunity to private actors. We would submit that Yearsley is that case because Yearsley is properly interpreted as an absolute immunity, so long as the Yearsley conditions are met, there was a conveyance of the authority and the actor was acting under. The government had authority to convey the power to the private actor, and the private actor was acting according to its federal remit. That's the key point here. This is not Campbell-Ewald, because we are acting in conformity with our federal instructions, and where we are acting in conformity with our federal instructions, we are entitled to the derivative sovereign immunity, and this court should not hold otherwise. That gives rise to the collateral order jurisdiction. Finally, on the derivative sovereign immunity point, Your Honor, we don't think a contract is required, even though a contract was present in Yearsley itself, and in cases like Florsky or Murray. It's not required. Remember the statute, Congress said, by grant, contract, or otherwise. That's 22 U.S.C. 2452A, and here it's the otherwise. We are delegated these powers through a detailed regulatory scheme. We have complied with it. We have done everything the federal regulations require us to, and Mr. Seligman hasn't said otherwise. He is saying that we haven't done something consistent with state law, but even if you were to require something like an agency relationship, we certainly satisfy any agency relationship here. We are acting in the government's place. I know Judge Lopez raised questions about the term surrogate, but I think it's fair to say the government has enlisted a private actor to act as the administrator of the program in lieu of and on behalf of the government, and Your Honor, the regulations, respectfully, I must disagree with Mr. Seligman, do not disclaim agency. I think if Your Honors look to the cited regulation he mentioned, 22 CFR 62.9D5, he omitted a key phrase. Yes, it tells us we can't say the government is the sponsor, but it also says at the end of the same sentence, we may say that we've been designated by the Department of the State as a sponsor of an exchange visitor program. The end of the very sentence that Mr. Seligman cited to you is consistent with an agency relationship to state, so if agency were required, it's satisfied. For all those reasons, we respectfully request that you reverse and order that the district court direct the district court to enter judgment for cultural care. Thank you very much. Thank you, and thank you both for the arguments. That concludes argument in this case. Attorney Sullivan and Attorney Seligman, you should disconnect from the hearing at this time.